EMC MORTGAGE CORPORATION

v.

Tara J. LENTZ a/k/a Tara A. Lentz and Brandon L. Funk, and Gregory K. Millen

Appeal of: Gregory K. Millen.

Commonwealth Court of Pennsylvania.

Argued March 31, 2009.

Decided April 28, 2009.

---

Eric Suter, York, for appellant, Gregory K. Millen.

James McNally, Pittsburgh, for appellee, EMC Mortgage Corporation.

BEFORE: SMITH–RIBNER, Judge, BUTLER, Judge, FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Gregory K. Millen (Millen) appeals from the order of the Court of Common Pleas of York County (trial court) which vacated its prior grant of Millen's cross motion for summary judgment and granted EMC Mortgage Corporation's (EMC) motion for summary judgment. We affirm.

On September 28, 2000, Tara J. Lentz and Brandon J. Funk (Lentz and Funk) purchased a piece of property located at 102 Hutton Road in New Cumberland, York County (Property). Lentz and Funk mortgaged the Property with Bank of America (BoA); such mortgage was recorded in York County on October 10, 2000. Subsequently, Lentz and Funk defaulted on the mortgage.

On April 11, 2003, BoA instituted this action by filing a complaint in mortgage foreclosure against Lentz and Funk. BoA's complaint alleged a mortgage value of $84,945.70. On June 9, 2003, BoA took a default judgment in the amount of $86,113.90 against Lentz and Funk. On that same date, BoA filed a praecipe and writ of execution as to both parties with regard to the default judgment and a sheriff's sale was scheduled for November 24, 2003. On October 14, 2003, BoA cancelled that sale as a result of Lentz and Funk's bankruptcy filing on June 30, 2003.

While the bankruptcy was pending, on April 7, 2004, a writ of scire facias was praeciped by Fairview Township (Township) and entered by the trial court to collect on a municipal claim on the Property. The municipal claim was for the collection and disposal of sewer and refuse on the Property. On July 3, 2004, Township took a default judgment in the amount of

$1,417.10. By August 10, 2004, a writ of execution, notice and affidavit of service were sent to all parties of interest, including BoA and EMC, regarding the sale of the Property to satisfy the judgment.[1] Township also supplied an affidavit of service certifying notice to EMC as a party in interest pursuant to Pa. R.C.P. No. 3129.2.

On October 18, 2004, a judicial sheriff's sale of the Property was conducted to satisfy the municipal lien. At that sale, Millen purchased the Property for $8,850.00, satisfying Township's lien. A deed was issued and recorded on December 7, 2004. Neither BoA nor EMC appeared at the sale, nor did they challenge the sale afterwards.

Following Millen's purchase of the Property, BoA, on December 30, 2004, obtained an order from the bankruptcy court granting relief to proceed with its foreclosure action. On January 26, 2005, BoA re-filed a writ of execution on its June 2003 default judgment. Millen, having acquired the Property by judicial sale, was made a party to the litigation on June 13, 2005. Millen filed an answer and new matter to BoA's complaint on June 17, 2005. On July 1, 2005, BoA responded to Millen's new matter. On September 29, 2005, BoA filed a voluntary substitution of parties pursuant to Pa. R.C.P. No. 2352, formally naming EMC as the substituted plaintiff.

On April 9, 2007, EMC filed a motion for summary judgment. On June 29, 2007, Millen answered EMC's motion and filed a cross-motion for summary judgment. On September 20, 2007, the trial court issued an order and opinion which denied EMC's motion and granted Millen's cross-motion for summary judgment. On October 10, 2007, EMC presented an emergency motion for reconsideration before the trial court's current business session. On January 10, 2008, the trial court issued an order vacating its prior grant of summary judgment to Millen and entered an order granting summary judgment on behalf of EMC. Millen appealed to our court.[2]

Millen contends that the trial court erred in failing to conclude that the provisions pertaining to the discharge of a prior-in-time mortgage upon judicial sale of property established by Section 8152 of the Judicial Code, 42 Pa.C.S. § 8152 were inapplicable to this action,[3] that 42 Pa.C.S. § 8152, applies to this action, even if the

---

1. BoA had assigned Lentz and Funk's mortgage to EMC.

2. Our review of the trial court's grant of summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *E.O.J., Inc. v. Tax Claim Bureau of Schuylkill County*, 780 A.2d 814 (Pa.Cmwlth.2001), *petition for allowance of appeal denied*, 568 Pa. 637, 793 A.2d 910 (2002). Summary judgment is only appropriate when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party is clearly entitled to judgment as a matter of law. *Id.* In the present controversy, there are no issues of material fact. There is only a question of law, whether the trial court committed an error of law.

3. Section 8152 of the Judicial Code, 42 Pa. C.S. § 8152, provides for how judicial sales affect a lien of mortgage as follows:

(a) General rule.—Except as otherwise provided in this section, a judicial or other sale of real estate shall not affect the lien of the mortgage thereon, if the lien of the mortgage is or shall be prior to all other liens upon the same property except:
* * *
(3) Taxes, municipal claims and assessments whose lien though afterwards accruing has by law priority given to it.
* * *
(c) Sale on prior lien.—A judicial or other sale of real estate in proceedings under a prior judgment or a prior ground rent, or in foreclosure of a prior mortgage, shall discharge a mortgage later in lien.

Township proceeded under Section 31 of what is commonly known as the Municipal Claims and Tax Lien Act (MCTLA), Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. § 7281, because Section 20002(g) of the Judiciary Act Repealer Act (JARA), 42 P.S. § 20002(g), displaced statutes and parts of statutes inconsistent with the Judicial Code.[4]

Initially, both parties stipulate that this action arose under the MCTLA. A municipal claim is defined in pertinent part as, "[t]he claim arising out of, or resulting from, a tax assessed, service supplied, work done, or improvement authorized and undertaken, by a municipality. . . ." Section 1 of MCTLA, 53 P.S. § 7101. The

Township's claim was for the collection and disposal of sewage and refuse on Property. Thus, the analysis used by the trial court was for a municipal claim, not a tax lien.

Under Section 3 of the MCTLA, 53 P.S. § 7106, all municipal claims, "shall arise when lawfully imposed and assessed and shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property, before any other obligation, judgment, claim, lien, or estate with which the said property may become charged, or for which it may become liable. . . ." Therefore, the Township's municipal claim had priority to be paid in full over all other liens on the Property, including EMC's mortgage.

---

4. Section 31 of MCTLA, 53 P.S. § 7281, provides in pertinent part as follows:

Judicial sales; effect of; postponement of sale; decree for sale; stay; evidence; bids; redemption; deed
\* \* \*
Mortgages, ground-rents, and other charges on or estates in the property which were recorded . . . before any tax other than for the current year accrue, or before the actual doing of the work in front of or upon the particular property for which the municipal claim is filed, shall not be disturbed by such sale unless a prior lien is also discharged thereby.

In case the property be not sold for a sum sufficient to pay all taxes and municipal claims, together with the costs thereon, the plaintiff in any such claim may postpone the sale, without payment of costs, and file his petition setting forth that more than one year has elapsed since the filing of his claim; that he has exposed the property to sheriff's sale thereunder, and was unable to obtain a bid sufficient to pay the upset price in full; and, if the plaintiff is not a municipality as defined in this act, that he will bid sufficient to pay the upset price, and upon the production of searches or a title insurance policy showing the state of the record and the ownership of the property, and of all tax and municipal claims, mortgages, ground-rents, or other charges on or estates in the land, the court shall grant a rule upon all parties thus shown to be interested

to appear and show cause why a decree should not be made that said property be sold, freed, and cleared of their respective claims, mortgages, charges, and estates. If, upon a hearing thereafter, the court is satisfied that service has been made of said rule upon the parties respondent, in the manner provided in section 39.2, and that the facts stated in the petition be true, it shall order and decree that said property be sold at a subsequent sheriff's sale day. . . . All property at sheriff's sale shall be sold, clear of all claims, liens, mortgages, charges, and estates, to the highest bidder at such sale; and the proceeds realized therefrom shall be distributed in accordance with the priority of such claims; and the purchaser at such sale shall take, and forever thereafter have, an absolute title to the property sold, free, and discharged of all tax and municipal claims, liens, mortgages, charges, and estates of whatsoever kind, subject only to the right of redemption as provided by law. . . .
\* \* \*
Upon the delivery by the sheriff of a deed for any property sold under a tax or municipal claim, the judgment upon which such sale was had shall thereupon and forever thereafter be final and conclusive as to all matters of defense which could have been raised in the proceeding, including payment, and no error or irregularity in obtaining or entering of such judgment shall effect the validity thereof.

■ The MCTLA provides a two-step procedure for conducting judicial sales when executing upon a municipal lien. First, there is an initial upset sale and then, if the property is not sold at the upset sale, a judicial sale, free and clear of all liens and encumbrances is held. In the case of an upset sale, the upset price is the amount sufficient to pay all of the municipalities' claims in full. Section 29 of the MCTLA, 53 P.S. § 7279. If the upset price is not obtained, the municipality may petition the trial court to issue a rule to show cause why the property should not be sold free and clear of all claims, mortgages, charges and estates. 53 P.S. § 7281. If the court agrees, an order will be issued that the property be sold free and clear of all liens, including mortgages. *Id.* Thus, a prior-in-time mortgage will not be divested by an upset sale, but will be divested at a free and clear sale. *Id.*

■ In the present controversy, the judicial sale was an upset sale under the MCTLA. However, Millen contends that he purchased the property free and clear. In accordance with 53 P.S. § 7281, Millen purchased the property subject to EMC's mortgage.

Millen asserts that his is an issue of first impression. Millen states that in 1976, when the Judicial Code was adopted, there was "a distillation of approximately 6000 sections of Purdon's Statutes enacted over a 277–year span." Committee Comment to Judiciary Act of 1976 at Conclusion. The Committee Comment to the Act discusses the broad scope of the Judicial Code and is careful to emphasize that "changes in language and intent, while relatively insignificant in the context of the overall project, may amount to a complete reversal of practice in the context of a specific case." *Id.* Millen contends that this is such a case.

Millen states that the mortgage · discharge provisions of the MCTLA, on which the trial court relied, were repealed by the JARA and supplanted by the discharge provisions of the Judicial Code at 42 Pa. C.S. § 8152.

Section 20002(g) of JARA, 42 P.S. § 20002(g), provides that "[a]ll other parts of those acts which are specified in this section and all other acts and parts of acts are hereby repealed insofar as they are in any manner inconsistent with this act or the act to which this is a supplement." Millen specifically contends that Section 31 of MCTLA, 53 P.S. § 7281 is inconsistent with Section 8152 of the Judicial Code, and thus, the Code prevails, as it would be considered repealed by Section 20002(g) of JARA.

Millen argues that the rules set forth in 53 P.S. § 7281 of the MCTLA regarding the discharge of a mortgage lien by means of a judicial sale are "inconsistent" with the discharge scheme set forth in 42 Pa. C.S. § 8152 of the Judicial Code. The Judicial Code states that: "[A] judicial · . . . sale of real estate shall not affect the lien of a mortgage thereon, if the lien of the mortgage is or shall be prior to all other liens upon the same property except . . . (3) Taxes, municipal claims and assessments whose lien though afterwards accruing has by law priority given it." 42 Pa.C.S. § 8152(a)(3). Millen contends that under the Judicial Code the municipal claim here at issue has priority afforded by law. *See* 53 P.S. § 7106(a). The language of Section 8152(a)(3) of the Judicial Code, expressly provides that a judicial sale on an after-accruing municipal lien discharges the prior-in-time mortgage. Thus, Millen contends, the language in Section 8152(a)(3) of the Judicial Code is inconsistent with Section 31 of the MCTLA, 53 P.S. § 7281, which provides that the mortgage "shall not be disturbed" by such a

sale. Therefore, under JARA, such an inconsistent provision in Section 31 of the MCTLA, 53 P.S. § 7281, would be repealed to the full extent of its inconsistency with Section 8152(a)(3) of the Judicial Code.

The trial court determined that, although Section 3 of the MCTLA, 53 P.S. § 7106(a), afforded a municipal lien legal priority, "that priority is only in regard to payment. It does not determine the factual precedence of a lien." Trial Court Opinion, January 10, 2008, at 7. Based on that determination, the trial court concluded that EMC's mortgage was not divested, as it was recorded prior to the Township's claim and thus, had priority. Id. at 8. The trial court stated that, as the statutory basis for the sheriff's sale was the MCTLA, the effect of such sale must be tested under the MCTLA, without regard to any other legislation. Id. at 7–8. Therefore, the trial court looked to 53 P.S. § 7281 for the effects of a judicial sale under the MCTLA. The trial court determined that EMC's "mortgage was not divested because it was recorded prior to ... Township's claim, and factually it had priority." Id. at 8. The trial court stated that EMC "is entitled to judgment as a matter of law because ... [EMC]'s Mortgage had a factual priority over ... Township's lien and the mortgage was specifically preserved by 53 P.S. § 7281." Id. at 8–9.

Millen contends that the trial court's determination does not eliminate the inconsistency between the two conflicting discharge provisions, but actually emphasizes the conflict. Millen states that, assuming that Section 31 of the MCTLA's reference to prior liens does speak to the factual timing of a lien's attachment, as opposed to priority afforded a lien by operation of law, Section 31 of the MCTLA's discharge provision is inconsistent with

Section 8152(a)(3) of the Judicial Code. Section 8152 of the Judicial Code clearly discharges a mortgage in circumstances where judicial sale is conducted in connection with a municipal lien that is "afterwards accruing" yet given legal priority. Where Section 31 of the MCTLA, 53 P.S. § 7281 ostensibly demands a municipal lien filed prior in time as a condition of discharging a mortgage upon judicial sale, Section 8152 of the Judicial Code discharges a mortgage where the municipal lien is after-filed yet accorded legal priority. Simply stated, Section 8152 of the Judicial Code eschews the distinction on which the court below relied, i.e., a distinction between legal priority for purposes of payment and factual priority for purposes of discharge. Millen contends that because the two sections treat the discharge of a mortgage based upon a judicial sale in satisfaction of a municipal lien in a plainly inconsistent fashion, Section 8152 of the Judicial Code controls by operation of JARA's general repeal provision.

Millen asserts that once Section 8152 of the Judicial Code is applied to the undisputed facts of the case, i.e., that the Township lien accrued after the EMC mortgage, and that the Township lien had legal priority by operation of Section 3(a) of the MCTLA, 53 P.S. § 7106(a), EMC's mortgage falls within the express exception to the general rule of survival articulated in Section 8152(a)(3) of the Judicial Code and its mortgage did not survive the judicial sale. Millen contends that the trial court erred in failing to give effect to Section 8152 of the Judicial Code.

Millen further states that it is irrelevant as to whether one characterizes the sale that occurred as an upset sale under the MCTLA, as an upset sale "is held under the auspices of the sheriff's office and is a judicial sale." *JP Morgan Chase Bank v. Zellin, et al.*, 82 Pa. D & C 4th 460, 472 n.

9 (Com.Pl.Carbon County 2007). Millen further relies on the following language from our Superior Court:

> As to what is a judicial sale has been fully discussed by our Brother Baldrige in the case of *City of New Castle v. John Whaley's Heirs*, 102 Pa.Super. 492, 496 (157 A. 503): "A judicial sale is defined by Rapalje and Lawrence, Vol. 1, page 699, as 'a sale under the judgment, order, or decree of the court; as sale under judicial authority, by an officer legally authorized for the purpose, such as a sheriff's sale, an administrator's sale, etc.' Bouvier, Vol. 2, page 1754, Rawle's Third Edition, gives as a definition: 'A sale, by authority of some competent tribunal, by an officer authorized by law for the purpose.' "

*Uniontown v. McGibbons*, 115 Pa.Super. 132, 174 A. 912, 915 (1934).

Accordingly, Millen argues that as the sale was a "judicial sale", the provisions of Section 8152 of the Judicial Code govern the discharge of the mortgage. The Judicial Code does away with the cumbersome two-step process for enforcing municipal claims against property, streamlining the process and conserving scarce resources.[5]

 Although Millen maintains that the Judicial Code governs this case, we agree with the trial court that the MCTLA has not been repealed by JARA. "It is a widely recognized principle that repeals by implication are not favored and will not be permitted if there is any other reasonable construction, and that a law is not repealed by a latter enactment if the two may be operative without repugnance to each other." *Hulsizer v. Labor Day Committee, Inc.*, 557 Pa. 467, 476, 734 A.2d 848, 853 (1999). "These considerations are particularly significant in a case such as this, involving two statutes which for decades have coexisted without apparent conflict or confusion." *Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc.*, 461 Pa. 420, 429, 336 A.2d 609, 614 (1975). The MCTLA and the Judicial Code have coexisted for thirty years without an apparent challenge to the MCTLA as having been implicitly repealed by JARA.

The MCTLA provides a mechanism by which municipal claims and taxes are to be

---

**5.** Millen points out that under the MCTLA, the municipality would first conduct an upset sale subject to the mortgage and, if no one bid the amount of the municipal lien, the municipality may then obtain leave of court to sell the property free and clear of all liens. The Judicial Code eliminates the requirement that the municipality notify the mortgagee of its intent to sell free and clear and then obtain leave of court before exposing the property to a second public sale.

Millen further notes that under the Pa. R.C.P. Nos. 3129.1 and 3129.2, the mortgagee and every other holder of an interest in the property must receive written notice of the first judicial sale, i.e., the upset sale. Thus, the special requirement of notice to the mortgagee and leave to conduct a second sale, has been rendered obsolete and duplicative. Therefore, the mortgagee, having received notice of the pending sale, could have, according to Section 8152 of the Judicial Code, appeared at the sale to protect its interests and bid the prior municipal lien and sheriffs' costs.

According to Millen, the only way EMC's mortgage could have survived the judicial sale would have been if the Township had failed to give EMC notice of such sale. However, the record indicates that such notice was given to EMC. Thus, Millen states that where a mortgagee has received notice of sale sufficient under the due process clause and the Pennsylvania Rules of Civil Procedure, Section 8152 of the Judicial Code results in the discharge of its lien by judicial sale pursuant to an "after accruing" municipal lien having legal priority.

Millen contends that this outcome, of compelling the mortgagee to appear at the judicial sale and bid the prior municipal lien in order to preserve its interest in the property, may be claimed unfair or burdensome to the mortgagees, but that is for the legislature to determine, not this court.

collected and liens of those claims and taxes enforced. Section 8152 of the Judicial Code is a general statute which governs the effect of a judicial sale upon a mortgage. This portion of the Judicial Code is necessitated to modify the common law rule that a judicial sale divested all liens upon a property. *Household Consumer Discount Co. v. Extended Care Center, Inc.*, 299 Pa.Super. 74, 445 A.2d 154 (1982). Section 8152 of the Judicial Code is intended to preserve a first lien mortgage, except in certain enumerated instances. It does not purport to provide a procedure for collecting municipal claims and taxes, or establish a system covering the collection of municipal claims and taxes. Instead, it merely dictates what effect a judicial sale has on a mortgage lien. Because Section 8152 of the Judicial Code addresses a different subject matter and does not create a system of enforcing liens upon municipal claims and taxes, Sections 1971(a) and (b) of the Statutory Construction Act of 1972, do not support the implied repeal of Section 31 of the MCTLA, 53 P.S. § 7281.[6]

Section 8152 of the Judicial Code is not irreconcilable with Section 31 of the MCTLA, 53 P.S. § 7281. Section 8152(a)(3) of the Judicial Code addresses the subject of municipal claims and taxes and provides that a first lien mortgage will be discharged by a municipal claim "whose lien though afterwards accruing has by law priority given it." The extent to which a municipal lien will have priority in this case is governed by the MCTLA, which governs when and how a mortgage lien will be divested by a judicial sale conducted under that statute. The MCTLA provides that an upset sale does not disturb a first lien mortgage. Thus, as Section 8152 of the Judicial Code turns to the MCTLA to determine the circumstance in which a judicial sale divests a mortgage, the acts are complimentary, not irreconcilable.

Our Supreme Court in *Cedarbrook Realty, Inc. v. Nahill*, 484 Pa. 441, 399 A.2d 374 (1979), determined that in order to overcome the presumption that a latter statute does not impliedly repeal an earlier statute, one must show "that [the] 'two acts are irreconcilable, clearly repugnant as to vital matters to which they relate and so inconsistent that the two cannot have concurrent operation.'" *Id.* at 459, 399 A.2d at 383. (citations and emphasis omitted). Our Supreme Court stated that while two statutory schemes may be different and overlapping, it does not follow that they are irreconcilable under the law. *Id.*

We note that Millen argues that this is not a case of an "implied repeal." He contends that he does not have to demonstrate that Section 8152 of the Judicial Code is irreconcilable with Section 31 of the MCTLA, 53 P.S. § 7281 because JARA provides that a repeal occurs when "acts or parts of acts are hereby repealed insofar as they are in any manner inconsistent with" provisions of the Judicial Code. 42 Pa.C.S. § 20002(g). However, we agree with the trial court's determination that the two acts were not irreconcilable under the law. Section 8152 of the Judicial Code

---

**6.** 1 Pa.C.S. § 1971. Section 1971(a) and (b) of the Statutory Construction Act of 1972 provides in pertinent part as follows:

(a) Whenever a statute purports to be a revision of all statutes upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former statute and is intended as a substitute for such a former statute, such statute shall be construed to supply and therefore to repeal all former statutes upon the same subject.

(b) Wherever a general statute purports to establish a uniform and mandatory system covering a class of subjects, such statute shall be construed to supply and therefore to repeal pre-existing local or special statutes on the same class of subjects.

does not impliedly repeal the provisions of the MCTLA.

As stated previously, Section 8152 of the Judicial Code intended to preserve a first lien mortgage, except in certain enumerated instances. Unlike Section 31 of the MCTLA, it does not purport to provide a procedure for collecting municipal claims and taxes or to establish a system covering the collection of municipal claims and taxes. Instead, it merely dictates what effect a judicial sale has on a mortgage lien. Section 8152 of the Judicial Code addresses a different subject matter than Section 31 of the MCTLA. Because Section 8152 of the Judicial Code does not create a system of enforcing liens upon municipal claims and taxes as Section 31 of the MCTLA does, Sections 1971(a) and (b) of the Statutory Construction Act of 1972, do not support the implied repeal of Section 31 of the MCTLA, 53 P.S. § 7281. The trial court did not err.

Accordingly, we must affirm the decision of the trial court.

### ORDER

AND NOW, this 28th day of April, 2009 the order of the Court of Common Pleas of York County in the above-captioned matter is affirmed.