J-A26009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PNC BANK, NATIONAL ASSOCIATION | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| MARY VODDE-HAMILTON, | : | |
| ADMINISTRATRIX OF THE ESTATE OF | : | |
| JASON C. HAMILTON, MARY M. | : | |
| MANSUETO AND ANTHONY M. | : | No. 564 WDA 2024 |
| MANSUETO | : | |

Appeal from the Order Dated April 9, 2024
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): MG-22-000720

BEFORE: BOWES, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED: April 9, 2025**

PNC Bank, National Association ("PNC") appeals from the order that granted the motion for summary judgment filed by Mary M. and Anthony M. Mansueto (collectively "the Mansuetos") and dismissed PNC's foreclosure action. We affirm.

We glean the following factual background from the certified record. Jason Hamilton was the owner of a certain property in the borough of Dormont in Allegheny County, a county of the second class.[1] On August 20, 2011, Mr. Hamilton granted a $14,000 mortgage on the property to PNC, which it duly

---

[1] As PNC noted: "Pennsylvania's County Code divides the sixty-seven counties of the Commonwealth into nine classes. 16 P.S. § 210. Counties of the second class, such as Allegheny County, are those having a population of 1,000,000 and more but less than 1,500,000 inhabitants. *Id*." PNC's brief at 14 n.2.

recorded. Less than two months later, PNC obtained a second mortgage on the property to secure a loan of $76,287.50, which it recorded on October 18, 2011. Both mortgages gave PNC the right to pay taxes on the property if they were not remitted. Mr. Hamilton died on August 27, 2015.

On August 23, 2018, Dormont filed a writ of *scire facias* sur tax claim pursuant to the Municipal Claims and Tax Liens Act ("MCTLA"), 53 P.S. §§ 7101-7505, seeking to recover unpaid 2017 real estate taxes.[2] It filed an amended writ substituting Mr. Hamilton's estate as a party and listed a balance due of $2,381.17. With no response from the estate, a default judgment was entered by praecipe bn October 7, 2019.

On February 13, 2020, Dormont filed a praecipe for writ of execution of the judgment. The following month, it filed an amended affidavit listing PNC as the last recorded holder of every mortgage of record and verifying service upon it. The affidavit also identified other parties having recorded or unrecorded interests in the property, such as the local school district, the Pennsylvania Department of Revenue, Discover Bank, and utility companies. PNC acknowledged that it received the amended affidavit.

---

[2] For the uninitiated, *scire facias*, pronounced **sī**-ree **fay**-shee-əs, is "an *in rem* proceeding by which a lien holder, such as a municipality obtains a judgment on [its] lien." ***GLS Capital, Inc. v. Davis***, 899 A.2d 371, 374 n.1 (Pa.Cmwlth. 2006). It is Latin for "you are to make known, show cause." SCIRE FACIAS, Black's Law Dictionary (12th ed. 2024).

A sheriff's sale of the property took place on October 5, 2020, at which Map Consulting, LLC ("Map") purchased the property for $93,000. On November 6, 2020, the sheriff prepared a proposed distribution of the proceeds of the sale to third parties providing for roughly the following distribution: $10,000 in attorney fees; $11,250 to pay the full liens for Dormont's tax lien as well as county taxes, garbage and stormwater assessment, and three other municipal liens; $700 in costs; $14,000 to PNC for its first mortgage; $6,000 for Mr. Hamilton's outstanding Allegheny County criminal fines/costs/restitution; $600 to Beaver County for criminal court costs; $38,000 to Mr. Hamilton's estate; and $8,600 to Discover Bank for its judgment. The document indicated that lienholders had ten days to file exceptions, otherwise proceeds would be distributed as proposed. PNC received the proposed distribution but did not file an exception to the omission of its second recorded mortgage.

The sheriff's deed conveying the property to Map was recorded on November 9, 2020. On July 28, 2021, Map conveyed the property to the Mansuetos. Fourteen months later, PNC initiated an *in rem* action against the Mansuetos and Mr. Hamilton's estate seeking to foreclose on the second mortgage, asserting that it was in default because all payments due in June 2018 and thereafter were missed. The Mansuetos filed an answer and new matter asserting that PNC's mortgage was discharged by the sheriff's sale,

- 3 -

while the administratrix of Mr. Hamilton's estate filed an answer disclaiming any personal knowledge.

PNC filed a motion for summary judgment. The trial court denied PNC's motion, agreeing with the Mansuetos that the mortgage in question had been divested when its prior mortgage was discharged. PNC filed an interlocutory appeal which this Court quashed *sua sponte*. Meanwhile, the Mansuetos filed a motion for summary judgment which the trial court granted by order of April 9, 2024. The order, again citing the divestiture of the mortgage on which PNC sought to foreclose, dismissed the action *in toto*.

PNC filed a timely notice of appeal from the court's final order. The trial court did not order PNC to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and none was filed. The trial court nonetheless authored a Rule 1925(a) opinion explaining the reasons for its ruling. Appellant presents the following questions for this Court's resolution:

> (1) Whether the trial court erred in denying PNC's summary judgment motion on the basis that PNC has pled the elements of a mortgage foreclosure action as set forth in [Pa.R.Civ.P. 1147] and there is no genuine issue as to any material fact.
>
> (2) Whether the trial court erred in ruling that PNC's lien was divested by virtue of a previous sheriff's sale, and entering summary judgment in favor of the Mansuetos where the sale occurred pursuant to the Municipal Claims and Tax Lien Act, 53 [Pa.C.S.] §§ 7101–7505, but (1) the municipality did not file a petition for rule to show cause why the property should not be sold free and clear; (2) a rule was not issued by the court to show cause why the property should not be sold free and clear; (3) no hearing was held to determine if proper service had been made of a rule to show cause why the property should not be sold free and

clear; and (4) a free and clear order was not issued by the court prior to the sale.

PNC's brief at 4 (unnecessary capitalization omitted).

We begin by observing that, in an appeal from the grant of summary judgment, we exercise *de novo*, plenary review. **See**, **e.g.**, **Toth v. Chambersburg Hosp.**, 325 A.3d 870, 873 (Pa.Super. 2024). Further:

> A trial court should grant summary judgment only in cases where the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the nonmoving party. The trial court is further required to resolve any doubts as to the existence of a genuine issue of material fact against the moving party and may grant summary judgment only where the right to such a judgment is clear and free from doubt. An appellate court may reverse a grant of summary judgment only if the trial court erred in its application of the law or abused its discretion.

**Id**. at 873–74 (cleaned up).

Next, we consider the salient aspects of the substantive law at issue. Our legislature has provided that, as a general rule, a judicial sale of real property does not affect a mortgage thereupon so long as the mortgage in question is prior to all of the other liens on the property except, *inter alia*, other mortgages and "taxes, municipal claims and assessments whose lien though afterwards accruing has by law priority given it." 42 Pa.C.S. § 8152(a). However, "[a] judicial or other sale of real estate in proceedings under a prior judgment or a prior ground rent, or in foreclosure of a prior

mortgage, shall discharge a mortgage later in lien." 42 Pa.C.S. § 8152(c) (cleaned up).

A purchaser's mistaken belief that a mortgage had been discharged through the sheriff's sale is not grounds for relief. Thus, bidders must beware: "It is their business to examine beforehand, and after having made themselves acquainted with the facts and circumstances in relation to encumbrances, if any exist, then to decide for themselves as to what will be the legal effect and operation of the sale upon them." *Irwin Union Nat. Bank & Tr. Co. v. Famous*, 4 A.3d 1099, 1105 (Pa.Super. 2010) (cleaned up).

Turning to laws peculiar to sales to execute upon government liens, the Municipal Claims and Tax Liens Act ("MCTLA"), 53 P.S. §§ 7101-7505, establishes that all municipal taxes on a property are a lien on that property with priority over all other liens such that they must be paid in full first from the proceeds of any judicial sale.[3] *See* 53 P.S. § 7106(a)(1). A tax claim that has been reduced to a judgment by being docketed by the prothonotary "shall be enforceable as a lien against real property in the same manner and to the same extent as a judgment for money under the generally applicable laws of this Commonwealth." 53 P.S. § 7106(a)(2), (b).

---

[3] Hereinafter, reference within our discussion to a statute by section number shall refer to title 53 of the Pennsylvania Statutes unless otherwise indicated or obvious from context.

The MCTLA provides multiple avenues for a municipality to execute on a debtor's property to satisfy its tax lien.[4] Relevant to the arguments before us in the case *sub judice* are statutes providing for an upset sale, a judicial sale, and a free-and-clear sale. Regarding an upset sale, § 7279 provides that the plaintiff in any judgment recovered on a tax claim may, "upon paying the sheriff's costs, fix an upset price to be realized at any sale under such judgment, sufficient to pay all taxes and municipal claims, and all accrued but unfiled taxes and claims, in full." 53 P.S. § 7279. If no one bids enough to fully cover all taxes and municipal claims, the municipality may purchase the property for sheriff's costs, "subject to the lien of all taxes and municipal claims, and liens not otherwise discharged by the sale under existing law." *Id*.

Rules that apply to any judicial sale of a property subject to a tax or municipal lien are found in § 7281. That statute provides at the outset that no judicial sale of a property divests a tax claim "where the amount due is indefinite or undetermined, or where the same is not due and payable," or where "the proceeds of such sale may be insufficient to discharge" the lien. 53 P.S. § 7281. Section 7281 continues:

> On any such sale being made all tax claims shall be paid out of the proceeds thereof: first, the oldest tax having priority; and

---

[4] There are other options available to municipalities, such as filing a claim pursuant to the Real Estate Tax Sale Law ("RETSL"), §§ 5860.101-5860.803. Since Dormont chose to utilize the MCTLA, this memo focuses solely on the workings of that statutory scheme.

municipal claims shall be paid next, the oldest in point of lien having priority. Mortgages. . . which were recorded . . . before any tax other than for the current year accrue . . . shall not be disturbed by such sale **unless a prior lien is also discharged thereby**.

*Id*. (emphasis added).

If the judicial sale of a property subject to a municipal or tax lien does not produce a bidder willing to pay a sum sufficient to pay all the municipal claims and costs, the plaintiff can postpone the sale and file a petition for the court to issue a rule to show cause [("RTSC")] why the property should not be sold free and clear of all "claims, mortgages, charges, and estates." *Id*. If the court finds that all interested parties received notice in accordance with § 7193.2,[5] it orders the free-and-clear sale with "the proceeds realized therefrom [to] be distributed in accordance with the priority of such claims," after which "the purchaser at such sale shall take, and forever thereafter have, an absolute title to the property sold, free, and discharged of all tax and municipal claims, liens, mortgages, charges, and estates of whatsoever kind, subject only to the right of redemption as provided by law." *Id*.

In this vein, § 7283 establishes a procedure "in addition to the remedies prescribed in," *inter alia*, § 7281 for free-and-clear sales in municipalities in

_____

[5] Section 7193.2 provides specifics for the RTSC procedure.

counties of the second class, among others.[6] Pursuant to § 7283, the tax claimant may file a petition for a RTSC why the property at issue should not be sold clear of all "claims, liens, mortgages, ground rents, charges and estates." 53 P.S. § 7283(a). The petition must satisfy the court that the claimant has "the right to sell, together with searches or a title insurance policy, showing the state of record and the ownership of the property," along with "all tax and municipal claims, liens, mortgages, ground rents or other charges on, or estates in, the land, as shown by the official records of the city or county, or the political subdivision in which the real estate is situate[.]" *Id*. Once the court is satisfied that all the identified parties have received notice pursuant to § 7193.2, it orders the sale free and clear to the highest bidder.

After the tax lien is paid, "the balance of the proceeds realized . . . shall be distributed in accordance with the priority of the remaining claims, liens, mortgages, ground rents, charges and estates," while the purchaser obtains "an absolute title to the property sold, free and discharged of all tax and municipal claims, liens, mortgages, ground rents, charges and estates of whatsoever kind, subject only to the right of redemption as provided by law." 53 P.S. § 7283(a). Any party that desires to challenge the validity of the free-and-clear sale or the sufficiency of the notice thereof, "and any party claiming

---

[6] Notably, for a tax claim, as opposed to other types of municipal claims, "a writ of execution may issue directly without prosecution to judgment of a writ of *scire facias*" and a property sold through this means of execution "shall be sold in compliance with the provisions of [§ 7283]." 53 P.S. § 7106(c).

to have an interest in the premises which was not discharged by the sale must file a petition seeking to overturn the sale or to establish the interest within three months of the acknowledgment of the deed to the premises by the sheriff."  53 P.S. § 7193.3.

In sum, the MCTLA details three types of execution sales relevant herein:

(1) An upset sale pursuant to § 7279, which seeks only to recover all outstanding tax and other municipal claims.  Through this procedure a new owner can supplant the old by just paying the past-due taxes, but the new owner takes the property subject to all other liens thereon.

(2)  A judicial sale pursuant to § 7281 initiated by any party seeking to execute a judgment on a property that is subject to tax or municipal liens. This sale does not discharge recorded mortgage liens "unless a prior lien is also discharged thereby."  If the sale does not produce a bid sufficient to pay all municipal liens, then the plaintiff may postpone the sale and follow the procedures outlined in § 7192.2 to obtain a court order for a free and clear sale.

(3) A free-and-clear sale pursuant to § 7283, which gives the successful bidder title to the property free of an and all liens and estates.  In order to do this, the claimant causing the execution sale must first have the court issue a rule that allows any party whose interest will be affected by the sale to receive notice and protect its interests by, for example, itself paying the municipal

lien, bidding on the property, or objecting to the sale or proposed distribution in accordance with § 7193.3.  This procedure must be utilized, pursuant to § 7106(c), if the writ of execution issued without prosecution to judgment upon a writ of *scire facias*.

We now turn to the trial court's ruling and the arguments of the parties. The trial court determined that the sale at issue was a § 7281 judicial sale, not an upset sale.  It observed that, while that statute initially provides that "a mortgage recorded prior to the tax year for which the taxes remain unpaid" is not disturbed by a sheriff's sale, its "later language provides that this protection is inapplicable if a prior lien to the mortgage is discharged."  Trial Court Opinion, 7/5/24, at 4.  Here, since "[t]he first mortgage, a prior lien, was divested by the sheriff's sale," it follows that "the second mortgage was correspondingly divested."  *Id*. (cleaned up).

Arguing that the trial court erred in so holding, PNC advocates the view that unless the RTSC procedure is followed, any judicial sale to collect a municipal or tax lien is an upset sale.  It contends that the decision of our sister Court in **EMC Mortgage Corp. v. Lentz**, 972 A.2d 112 (Pa.Cmwlth. 2009) (discussed further *infra*), establishes that any sale pursuant to the MTCLA that does not follow the RTSC provisions of §§ 7181-7183 does not divest any mortgages that were recorded before the municipal lien arose.

PNC further argues that there is no factual or legal support for the notion that any prior encumbrances were discharged by this sale.  It posits:

Any suggestion that PNC's first mortgage or [second] mortgage w[as] discharged by virtue of the *scire facias* proceeding is incorrect. As held in **EMC**, a judicial sale pursuant to the [MTCLA] will not discharge a prior-in-time mortgage unless a free and clear sale is held. Given that the first mortgage and the [second] mortgage were both recorded in 2011, and that [Dormont] in the *scire facias* proceeding did not follow the show cause procedure set forth in the Act, the property was not sold free and clear of prior-in-time encumbrances such as the [second] mortgage.

PNC's brief at 22 (cleaned up).

The Mansuetos maintain that the *scire facias* proceeding is distinct from both an upset sale and a free-and-clear sale. They assert that the judgment that culminates from the *scrie facias* writ, pursuant to § 7106(a)(2), is enforceable the same as any other judgment for money. The Mansuetos contend that the sheriff's sale to execute Dormont's judgment was thus a generic judicial sale recognized in § 7281 of the MTCLA. Since PNC's second mortgage was behind its first mortgage in priority, and the first mortgage was discharged by the sale, pursuant to § 7281, the second mortgage was divested. As such, its present attempt to foreclose on that mortgage must fail. **See** Mansuetos' brief at 8-9.

Upon thorough consideration of the statutes and the parties' arguments, we cannot agree with PNC's position. This was not an upset sale in accordance with § 7279 because Dormont did not, prior to the sale, set an upset price sufficient to pay all taxes and municipal claims and prepay sheriff's costs. Further, since Dormont obtained a judgment on its tax claim, § 7283's free-and-clear RTSC procedures were not required by § 7106(c), which only

mandates compliance with § 7283 when a writ of execution issues "directly without prosecution to judgment of a writ of *scire facias*" 53 P.S. 7106(c). Likewise, since the sheriff's sale produced a bidder willing to pay an amount sufficient to satisfy all municipal claims and costs, Dormont did not have to follow § 7281's procedure calling for the postponement of the sale and obtaining a court order for a free and clear sale.

Rather, as is expressly contemplated by § 7106(a)(2), Dormont elected to satisfy its judgment in the same manner as any money judgment under the generally-applicable laws of this Commonwealth through a judicial sale. Therefore, PNC's two mortgages that were recorded prior to any of the municipal liens on the property, were not "disturbed by such sale **unless a prior lien** [**wa**]**s also discharged thereby**." 53 P.S. § 7281. Here, the judicial sale effectively discharged PNC's first mortgage by satisfying it with proceeds from the sale. Since PNC's first mortgage which was "prior" in both legal priority and time to PNC's second mortgage, pursuant to § 7281, PNC's second mortgage was discharged by the judicial sale.

The Commonwealth Court's **EMC** decision, relied upon by PNC, does not alter our assessment. First, that decision is not binding on this Court. **See**, **e.g.**, **In re Estate of Simpson**, 305 A.3d 176, 189 n.18 (Pa.Super. 2023) (noting that, while they may be considered for their persuasive value, Commonwealth Court decisions are not binding on this Court). Nor do we find that decision persuasive, as we deem it to be both distinguishable and based

upon an unsound reading of the Judicial Code's pronouncement on the effect of a judicial sale on a mortgage lien.

Section 8152 of that title provides in full:

**(a) General rule.--**Except as otherwise provided in this section, a judicial or other sale of real estate shall not affect the lien of a mortgage thereon, if the lien of the mortgage is or shall be prior to all other liens upon the same property except:

(1) Other mortgages, ground rents and purchase money due the Commonwealth.

(2) Taxes, municipal claims and assessments, not at the date of the mortgage duly entered as a lien in the office of the clerk of the court of common pleas.

(3) Taxes, municipal claims and assessments whose lien though afterwards accruing has by law priority given it.

**(b) Property of a decedent, etc.--**A judicial sale of the property shall divest the lien of a mortgage to the extent authorized by the court pursuant to the following provisions of Title 20 (relating to decedents, estates and fiduciaries):

Section 3353 (relating to order of court).

Section 3357 (relating to title of purchaser).

**(c) Sale on prior lien.--**A judicial or other sale of real estate in proceedings under a prior judgment or a prior ground rent, or in foreclosure of a prior mortgage, shall discharge a mortgage later in lien.

**(d) Unseated lands.--**Subsection (a) shall not apply to mortgages upon unseated lands or sales of unseated lands for taxes.

42 Pa.C.S. § 8152.

The **ECM** Court concluded that § 8152 was in conflict with § 7281 of the MCTLA as to whether a mortgage survives a judicial sale for tax liens that

post-date the mortgage. In so doing, the Court viewed § 8152's three enumerated exceptions as exceptions to the general rule that mortgages are preserved. *See EMC*, 972 A.2d at 117 ("Where . . . § 7281 ostensibly demands a municipal lien filed prior in time as a condition of discharging a mortgage upon judicial sale, [§] 8152 of the Judicial Code discharges a mortgage where the municipal lien is after-filed yet accorded legal priority.").

However, this interpretation is contrary to the the plain language of § 8152(a). Therein, the clause "except as otherwise provided in this section" refers to subsections (b) through (d), which describe instances when a mortgage that would have survived a judicial sale pursuant to subsection (a) are divested, namely through certain provisions of the estates and fiduciaries code, when the sale is to satisfy a prior-in-time judgment or mortgage, and when the mortgage in question applies to unseated lands.

The second "except" in § 8152(a) describes the mortgages that are preserved by subsection (a), namely mortgages that have no liens prior to them other than taxes, municipal liens, and other mortgages. The import of this is that if there is a prior lien of a type other than the three enumerated, then the mortgage in question does not survive the sale. Hence, if a mortgage was granted on a property that was already subject to a lien on a civil judgment, for example, then a judicial sale to satisfy that prior civil judgment would divest the mortgage.

Meanwhile, the Judicial Code also provides that a sale to discharge a prior lien "shall discharge a mortgage later in lien." 42 Pa.C.S. § 8152(c). This is the consistent with § 7281's provision that "[m]ortgages, ground-rents, and other charges on or estates in the property which were recorded, or created where recording is not required, before any tax other than for the current year accrue . . . shall not be disturbed by such sale **unless a prior lien is also discharged thereby**." 53 P.S. § 7281.

Here, the judicial sale effectively discharged PNC's first mortgage by satisfying it with proceeds from the sale. Since the first mortgage which was "prior" in both time and legal priority to PNC's second mortgage, pursuant to § 7281, PNC's second mortgage was discharged by the judicial sale the same as it would have been if the sale had been made to execute a foreclosure judgment on the first mortgage.

Moreover, even if PNC were correct that the judicial sale of the mortgaged property was a defective § 7283 free-and-clear sale, we would conclude that it waived its right to contest the discharge of its second mortgage. As recounted above, the MCTLA provides that any party wishing to challenge the validity of the free-and-clear sale, including the sufficiency of the notice thereof, "and any party claiming to have an interest in the premises which was not discharged by the sale must file a petition seeking to overturn the sale or to establish the interest within three months of the acknowledgment of the deed to the premises by the sheriff." 53 P.S. § 7193.3.

- 16 -

Instead of objecting to the sheriff's proposed distribution or filing a petition to establish its surviving interest in the property, PNC sat back and watched over $50,000—nearly the entire balance owed on the second mortgage—be distributed to not only junior lienholders, but to its debtor's estate.

In short, PNC had notice, motive, and opportunity to avoid divestiture of its second mortgage. It could have paid the taxes before or after Dormont filed its writ. It could have bought the property itself. After its first mortgage was satisfied, it could have objected to its other prior lien being passed over in favor of Discover Bank and Mr. Hamilton's estate. Having sat on its rights, PNC cannot now complain that there were irregularities in the sale.

Therefore, whether viewed as a result of the discharge of its first mortgage from a § 7281 judicial sale, or as its failure to utilize the mechanisms to timely advocate for the survival of its second mortgage following a procedurally-defective § 7283 free-and-clear sale, PNC's second mortgage on the property in question was divested by the sheriff's sale. As such, the trial court properly dismissed its foreclosure complaint.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/09/2025

- 17 -